IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| BECKY CLEMENTS,<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>COMPREHENSIVE SECURITY<br>SERVICES, INC., a Montana<br>registered foreign corporation;<br>FIRSTLINE TRANSPORTATION<br>SECURITY, INC., a Montana<br>registered foreign corporation; GARY<br>SMEDILE, individually; TERESA<br>BULLINGTON, individually; ZOE<br>HAUSER, individually;<br>TRANSPORTATION SECURITY<br>ADMINISTRATION; HOMELAND<br>SECURITY ADMINISTRATION;<br>TRINITY TECHNOLOGY GROUP,<br>INC., a Montana registered foreign<br>corporation; ABC Corporation, ABC<br>LLCs, and JOHN DOES 1-10,<br><br>　　　　　　　Defendants. | CV 19-45-BU-BMM-KLD<br><br><br>FINDINGS &<br>RECOMMENDATION |

Plaintiff Becky Clements brings this action alleging federal constitutional claims and a state law claim for blacklisting against her former employer, FirstLine Transportation Security, Inc. ("Firstline"), three FirstLine employees, and various other defendants. This matter comes before the Court now on two motions: (1) FirstLine's motion for partial judgment on the pleadings pursuant to Federal Rule

of Civil Procedure 12(c), and; (2) the individual FirstLine employees' motion to dismiss for failure to state a claim and, alternatively, for lack of subject matter jurisdiction under Rule 12(b)(6) and (1). For the reasons set forth below, both motions should be granted.

## I.   <u>Background</u>

The Transportation Security Administration ("TSA"), an agency of the United States Department of Homeland Security, contracted with Firstline to provide security screening services at several airports in Montana. (Doc. 13 at ¶ 1). Clements began working for Firstline as a supervisory transportation security officer in September 2014. (Doc. 13 at ¶ 1). Prior to her employment with FirstLine, Clements had been employed directly by TSA for six years. (Doc. 13 at ¶ 2). On or about August 6, 2015, FirstLine terminated Clements' employment for violating its social networking policy. (Doc. 13 at ¶ 4; Doc. 19 at ¶¶ 7, 18, 22).

In October 2015, TSA terminated its contract with FirstLine and awarded the contract to Defendant Trinity Technology Group ("Trinity"). (Doc. 19 at ¶¶ 28-29). As a condition of being awarded the contract, Trinity was required to offer current FirstLine employees the opportunity to retain their positions before hiring new employees. (Doc. 19 at ¶ 30). Clements applied for employment with Trinity, but was not hired. (Doc. 19 at ¶ 32).

In August 2016, Clements filed suit in state court against FirstLine and

Defendant Comprehensive Security Services, Inc. ("CSSI"), alleging state law

claims for wrongful discharge from employment and blacklisting. (Doc. 5).

FirstLine was served in August 2019, and timely removed the case to federal court

based on diversity jurisdiction.[1] (Doc. 1). On January 10, 2020, Clements filed an

Amended Complaint eliminating her wrongful discharge claim and adding three

FirstLine employees – Gary Smedile, Teresa Bullington, and Zoe Hauser – as

Defendants ("Individual Defendants").[2] (Doc. 19).

The Amended Complaint also adds three claims against FirstLine and the

Individual Defendants under the United States Constitution. In Count I, Clements

alleges that her social media posts were protected speech, and claims that FirstLine

and the Individual Defendants violated her First Amendment rights by terminating

her employment for exercising her protected speech. (Doc. 19 at 11-13). In Count

---

[1] CSSI was also served on August 1, 2019, but failed to enter an appearance in the case. (Doc. 23). On January 14, 2020, the Clerk of Court entered default against CSSI pursuant to Rule 55(a). (Doc. 23).

[2] Clements also added TSA, the Department of Homeland Security, and Trinity as Defendants. Trinity was served in July 2020, and filed an answer on August 13, 2020. (Doc. 58). As of the date of this Findings & Recommendation, Clements has not accomplished service on TSA or the Department of Homeland Security. At oral argument on October 30, 2020, Clements moved to dismiss TSA and the Department of Homeland Security from the case.

II, Clements alleges that FirstLine and the Individual Defendants violated her procedural due process rights under the Fifth Amendment by terminating her employment without following TSA procedures. (Doc. 19 at 13-15). In Count III, Clements alleges that FirstLine and the Individual Defendants violated her substantive due process rights under the Fifth Amendment because she had a property interest in continued employment, and the decision to terminate her employment had no basis in fact and was arbitrary and capricious. (Doc. 19 at 15-17).

FirstLine moves under Rule 12(c) for partial judgment on the pleadings on Clements' federal constitutional claims, and the Individual Defendants move under Rule 12(b)(6) to dismiss the federal constitutional claims and state law blacklisting claim pled against them for failure to state a claim for relief. Alternatively, and assuming Clements' federal constitutional claims fail as a matter of law, the Individual Defendants ask the Court to refrain from exercising supplemental jurisdiction over her state law blacklisting claim and dismiss the claim under Rule 12(b)(1).

## II.    FirstLine's Motion for Partial Judgment on the Pleadings

### A.    Rule 12(c) Legal Standard

4

A Rule 12(c) motion for judgment on the pleadings is "functionally identical" to a Rule 12(b)(6) motion to dismiss for failure to state a claim, which means that the same legal standard "applies to motions brought under either rule." *Cafasso, U.S. Ex rel. v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1062 n. 4 (9th Cir. 2011). A judgment on the pleadings is thus appropriate "when, taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law." *Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co., Ltd.*, 132 F.3d 526, 528 (9th Cir. 1997). "Not only must the court accept all material allegations in the complaint as true, but the complaint must be construed, and all doubts resolved, in the light most favorable to the plaintiff." *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 810 (9th Cir. 1988).

## B.     Discussion

Counts I through III of the Amended Complaint are based on the theory of liability established in *Bivens v. Six Unknown Named Agents,* 403 U.S. 388 (1971), which recognized "an implied private right of action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Correctional Services Corporation v. Malesko*, 534 U.S. 61, 66 (2001). FirstLine argues these claims fail as a matter of law because (1) a *Bivens* action cannot be maintained against a private entity and, even if it could, (2) the claims do not fall within the

categories of claims previously recognized under *Bivens* and there is no basis for recognizing a new implied cause of action.

The United States Supreme Court has held that *Bivens* claims cannot be maintained against federal agencies or private corporations. See *FDIC v. Meyer*, 510 U.S. 471, 486 (1994) (no *Bivens* claim against a federal agency); *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 63 (2001) (no *Bivens* claim against a private corporation acting under color of federal law). Because "[t]he purpose of *Bivens* is to deter individual federal officers from committing constitutional violations," a *Bivens* action may only be maintained against individual officers who commit unconstitutional acts under federal authority. *Malesko*, 534 U.S. at 70-72. If it were to imply a cause of action against federal agencies or private corporations acting under color of federal law, the Supreme Court reasoned, there would be no reason for plaintiffs to bring damages actions against individual officers and the deterrent effects of the *Bivens* remedy would be lost. *Malesko*, 534 U.S. at 70-71. See also *Bromfield v. McBurney*, 2008 WL 2746289 at *5 (W.D. Wash. July 8, 2008) (recognizing that "the Supreme Court's decision in *Malesko* expressly provides that for a *Bivens* remedy to be available, the defendant . . . must be an individual"); *Minneci v. Pollard*, 565 U.S. 118, 125-27 (2012) (noting that

the Supreme Court's holding in *Malesko* was based in large part on "the nature of the defendant, i.e., a corporate employer rather than an individual employee").

As alleged in the Amended Complaint and stipulated to by the parties, FirstLine entered into a contract with TSA, a federal agency, to provide security screening services at several Montana airports. (Doc. 13 at 2; Doc. 19 at 4). In light of this contractual relationship, FirstLine was allegedly acting under color of federal law for purpose of Clements' claims. As *Malesko* and subsequent cases in the Ninth Circuit make clear, however, *Bivens* does not allow a private right of action for damages against private entities that are alleged to have engaged in constitutional deprivations, even if they are acting under color of federal law. See e.g. *Flores v. Ashley*, 2017 WL 2423492, at * 4 (D. Ariz. June 5, 2017); *Robles v. United States*, 2013 WL 12040006, at *2 (D. Ariz. Dec. 13, 2013); *Riggio v. Bank of America National Trust & Saving Association,* 31 Fed. Appx. 505, 505-06 (9th Cir. 2002) (unpublished) (recognizing that there is no private right of action under *Bivens* "for damages against private entities that are alleged to have engaged in constitutional deprivations, even if they are acting under color of federal law."). Because FirstLine is a private corporation rather than an individual, Clements' *Bivens* claims against it for violations of the First and Fifth Amendments fail as a

matter of law, regardless of whether it was acting under color of federal law. See

*Malesko*, 534 U.S. at 66.

In an attempt to avoid this result, Clements argues *Malesko* was limited to its

facts and does not apply here because it involved an Eighth Amendment claim

"against a private corporation operating a halfway house prison-management

firm." *Malesko*, 634 U.S. at 63. Because Clements raises First and Fifth

Amendment claims in the context of employment as a transportation screening

officer under TSA's contract with FirstLine, she takes the position that *Malesko* is

factually and legally inapposite.

Clements' argument that *Malesko*'s holding applies only in the Eighth

Amendment context is unavailing. The question presented in *Malesko* was whether

a *Bivens* cause of action for damages should be implied against a private entity

acting under color of federal law, and it was this broad question that the Supreme

Court answered in the negative. *Malesko*, 634 U.S. at 66. In doing so, the *Malesko*

Court focused on the defendant's status as a private entity as opposed to an

individual employee, rather than on the constitutional right asserted.

Clements also maintains that courts in the Ninth Circuit have not construed

*Malesko* and the United States Supreme Court's subsequent decision in *Minneci v*

*Pollard*, 565 U.S. 118, 126-27 (2012) so broadly as to entirely preclude *Bivens*

8

claims against private actors like FirstLine. In *Minneci*, the Supreme Court held

that a federal prisoner may not pursue a *Bivens* claim against individual employees

of a privately operated federal prison when state tort law remedies are available.

*Minneci*, 565 U.S. at 126. As interpreted by the Ninth Circuit, *Minneci* does "not

completely foreclose applying *Bivens* to private actors." *Vega v. United* States, 881

F.3d 1146, 1153 (9th Cir. 2018). See also *Bromfield v. McBurney*, 2008 WL

2746289, at *6 (W. D. Wash. July 3, 2008) (recognizing that "[i]n the Ninth

Circuit… 'the private status of the defendant will not serve to defeat a *Bivens*

claim, provided that the defendant engaged in federal action." (citing

*Schowengerdt v. General Dynamics Corp.*, 823 F.2d 1328, 1337-38 (9th Cir.

1987)). Clements relies on this line of authority for the proposition that FirstLine's

status as a private entity is not sufficient to defeat her *Bivens* claims.

But it is not FirstLine's private status alone that defeats Clements' *Bivens*

claims. Rather, it is FirstLine's status as a corporate entity, as opposed to an

individual, that makes a *Bivens* claim unavailable. As *Minneci* specifically

recognized, the holding in *Malesko* was based on "the nature of the defendant, i.e.

a corporate employer rather than an individual employee." *Minneci*, 565 U.S. at

126-27. *Bromfield* highlighted the same distinction, noting that "the Supreme

Court's decision in *Malesko* expressly provides that for a *Bivens* remedy to be

9

available, the defendant . . . must be an individual." *Bromfield*, 2008 WL 2746289

at *5. Thus, even assuming FirstLine was acting under color federal law,

Clements' *Bivens* claims fail as a matter of law because FirstLine is a private

corporation, rather than an individual.

## III.   <u>Individual Defendants' Motion to Dismiss</u>

The Individual Defendants move under Rule 12(b)(6) to dismiss the federal

constitutional claims and state law blacklisting claim pled against them for failure

to state a claim for relief. Alternatively, and assuming Clements' federal

constitutional claims fail as a matter of law, the Individual Defendants ask the

Court to refrain from exercising supplemental jurisdiction over her state law

blacklisting claim.

### A.   **Rule 12(b)(6) Legal Standard**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a

complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is

proper under Rule 12(b)(6) when the complaint "either (1) lacks a cognizable legal

theory or (2) fails to allege sufficient facts to support a cognizable legal theory."

*Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013). A plaintiff must state a

claim for relief that is "plausible on its face" to survive a motion to dismiss.

*Zixiang Li,* 710 F.3d at 999 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

At the motion to dismiss stage, the Court "take[s] all well-pleaded factual allegations in the complaint as true, construing them in the light most favorable to the nonmoving party." *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018) (citation omitted).

### B.      Constitutional Claims (Counts I-III)

The Individual Defendants argue Clements' constitutional claims fail as a matter law because they do not fall within the categories of claims previously recognized under *Bivens* and there is no basis for recognizing a new implied cause of action.

The United States Supreme Court has previously recognized a *Bivens* action in only three contexts: (1) unreasonable search and seizure by federal officers in violation of the Fourth Amendment, see *Bivens*, 403 U.S. at 396-97; (2) gender discrimination by a member of Congress in violation of the Fifth Amendment, see *Davis v. Passman*, 442 U.S. 228, 248-49 (1979), and (3) deliberate indifference to a prisoner's medical needs by federal officers in violation of the Eighth Amendment, see *Carlson v. Green*, 446 U.S. 14, 19 (1980).

In the forty years since *Carlson* and *Davis*, the Supreme Court has "consistently rebuffed requests to add to the claims allowed under *Bivens*. *Hernandez v. Mesa*, 140 S.Ct. 735, 743 (2020). In expressing its "reluctan[ce] to

11

create new causes of action," the Supreme Court has recognized that "Congress is best positioned to evaluate 'whether, and the extent to which,…liabilities should be imposed upon individual officers and employees of the Federal Government'." *Hernandez*, 140 S.Ct. at 742 (citing *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1856 (2017)).  The Supreme Court has made clear that expanding "Bivens is a disfavored judicial activity" and "has gone so far as to observe that if [*Bivens, Davis,* and *Carlson*] had been decided today, it is doubtful that [the Court] would have reached the same result." *Hernandez*, 140 S.Ct. at 742-43 (citing *Abbasi*, 137 S.Ct. at 1856).

The Supreme Court has established a two-part test to determine whether a *Bivens* action should be recognized. *Ioane v. Hodges*, 939 F.3d 945, 951 (9th Cir. 2019) (citing *Abbasi*, 137 S.Ct. at 1864). At step one, the court must determine whether the claim arises in a "new *Bivens* context, i.e., whether the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court]." *Abbasi*, 137 S.Ct. at 1864 (internal quotations removed). Clements concedes that the First and Fifth Amendment claims alleged in Counts I-III arise in a new context and this case thus differs from previous cases in which the Supreme Court has recognized a *Bivens* cause of action. (Doc. 63 at 7-8).

Where, as here, the plaintiff's claims arise in a new context, the court

proceeds to step two. At step two, the court may extend *Bivens* only if (1) the

plaintiff has no other adequate remedy, and (2) there are no "special factors" that

counsel hesitation in extending *Bivens*. *Ioane*, 933 F.3d at 951.

### 1.   Alternative Remedies

Clements argues she has no existing alternative remedies because the

Aviation and Transportation Security Act of 2001 ("ATSA") preempts all state and

federal causes of action against the Individual Defendants. Congress enacted the

ATSA "in the wake of the September 11, 2001 terrorist attacks in order to ensure

the safety and security of the civil air transportation system in the United States."

*Botelho v. Transportation Sec. Admin.*, 2018 WL 6801809, at *4 (D. Haw. Dec.

26, 2018). See 49 U.S.C. § 114). The ATSA grants the TSA "extremely broad

authority over personnel matters,' including hiring and firing decisions, and the

'TSA's discretion over screening personnel employment matters is sweeping in its

breadth.'" *Soto v. McAleenan*, 2019 WL 4739269 *4 (D. Mont. July 26, 2019)

(citing *Connors v. United States*, 863 F.3d 158, 161 (2nd Cir. 2017)). In particular,

the ATSA provides in relevant part that "[n]otwithstanding any other provision of

law, the Under Secretary of Transportation for Security may employ, appoint,

discipline, terminate and fix the compensation, terms, and conditions of

employment" for security screening personnel. 49 U.S.C. §44935(2)(f)(1). The

ATSA also gives the Under Secretary of Transportation for Security the authority

to contract with private security companies, like FirstLine, to employ airport

security screeners, like Clements. 49 U.S.C. §§ 44919, 44920.

Federal courts have consistently interpreted the "notwithstanding" language

cited above to mean that the ATSA "precludes judicial review of employment

decisions," and "preempts claims by security screeners against the TSA which are

brought pursuant to other federal laws." *Soto*, 2019 WL 4739269, at *4 (holding

the ATSA preempts claims under the Rehabilitation Act and the Age

Discrimination in Employment Act) (citing *Botelho v. Transportation Security

Administration*, 2018 WL 6801809, at *5 (D. Haw. Dec. 26, 2018)). See also

*Martin v. Nielsen*, 2019 WL 3035094, at * 2 (C.D. Cal. Apr. 10, 2019 (recognizing

"that the ATSA preempts claims of TSA security screeners under certain federal

employment statutes, including the Rehabilitation Act" and listing several cases to

that effect). In addition, some courts have held that the ATSA also preempts state

law claims by security screening employees against private companies that have

contracted with the TSA. See *Orelski v. Pearson*, 337 F.Supp.2d 695 (W.D. Pa.

2004).

14

Citing this line of authority, Clements maintains she is without any alternative remedy against the Individual Defendants because the ATSA preempts any claims she might otherwise have under state or federal law. Clements argues it makes no sense to say that the ATSA preempts any alternative remedies she might have against FirstLine, but does not do the same for any alternative remedies she might have against the Individual Defendants.

Unlike FirstLine, the Individual Defendants have not raised ATSA preemption as an affirmative defense. To the contrary, the Individual Defendants argue in reply that ATSA preemption applies only to claims against the TSA and its Under Secretary or a private company under contract with the TSA, and does not extend to claims against individual employees.

By its terms, the ATSA's preemption provision vests "the Under Secretary of Transportation" with broad authority over the employment, appointment, discipline, compensation, terms, and conditions of employment for security screening personnel. 49 U.S.C. § 44935(2)(f)(1). Consistent with the plain language of the statute, federal courts have consistently construed the ATSA to preempt claims by security screeners against the TSA and its Under Secretary. See e.g. *Soto,* 2019 WL 4739269 at *4 (recognizing that the ATSA preempts claims by security screeners against the TSA); *Springs v. Stone*, 362 F.Supp.2d 686, 698-99

(E.D. Va. 2005) (concluding that the ATSA preempts claims against the TSA

Under Secretary). While some courts have held that the ATSA also preempts

claims against a private company under contract with the TSA, Clements does not

cite – and the Court has not found - any case extending the ATSA to preempt

claims against such a company's employees. See e.g. *Orelski*, 337 F.Supp.2d at

703-04 (concluding that the ATSA precluded claims against a security screening

company).

As *Orelski* recognized, analyzing the preemptive scope of a federal statute

like the ATSA "must begin with determining Congressional intent: Any

understanding of the scope of a preemption statue must rest primarily on a fair

understanding of Congressional purpose." *Orelski*, 337 F.Supp.2d at 699. In

enacting the ATSA, Congress "was specifically concerned about ensuring that

TSA have the right to hire and fire airport security screeners as needed according

to the demands and pressures of their jobs." *Springs*, 362 F.Supp.2d at 698-99. To

achieve its goal of ensuring the TSA's broad authority over employment matters,

Congress included a preemption provision in the ATSA that effectively protects

the TSA and its Under Secretary from claims by security screeners under state and

federal law. Consistent with Congressional intent, ATSA preemption also extends

to claims by security screeners against private companies under contract with TSA. See *Orelski*, 337 F.Supp.2d at 699.

Unlike application of ATSA preemption in these previously recognized employment contexts, however, extending ATSA preemption to state law tort claims by security screeners against individual employees of a company under contract with the TSA would not materially advance Congress's intent of ensuring that TSA have broad authority over personnel matters. The ATSA preempts claims that are based on an employment relationship, like claims under the ADEA and Rehabilitation Act. Such claims are not cognizable against individual defendants, and instead must be brought against an employer. See e.g. *Miller v. Maxwell's Intern. Inc.*, 991 F.2d 583, 587-88 (9th Cir. 1993) (individual defendants cannot be held liable for damages under the ADEA); *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) (Rehabilitation Act claims may be brought against an employer but are not cognizable against individual capacity defendants). Clements was employed by FirstLine, and did not have an employment relationship with the Individual Defendants, who she has sued only in their individual capacities. Particularly where it appears no other court has done so, this Court is reluctant to hold that the ATSA preempts state tort claims by a security screener against individual employees of a private company under contract with the TSA.

17

In fact, Clements has alleged a state law blacklisting claim against the Individual Defendants. Neither party takes the position that the ATSA preempts this claim, which provides an alternative remedy for some of the constitutional violations Clements alleges in one of her *Bivens* claims. For example, Count III of the Amended Complaint alleges, in part, that the Individual Defendants blacklisted Clements "by attempting and preventing her from obtaining employment with Trinity, thus, barring her from a profession in the transportation security industry governed by the TSA." (Doc. 19 at ¶ 65). While Clements' blacklisting claim does not provide a potential remedy for all of the harms alleged in Counts I-III, "[s]tate-law remedies and a potential *Bivens* remedy need not be perfectly congruent." *Minneci*, 565 U.S. at 129. See also *Vega v. United States*, 881 F.3d 1146, 1155 (9th Cir. 2018) (the fact that a plaintiff does "not adequately plead, or ultimately have, a meritorious claim" does not mean that the plaintiff "did not have access to alternative or meaningful remedies").

Whether Clements could have pled any other cognizable claims against the Individual Defendants to redress the other harms alleged in Counts I-III is not entirely clear. Even if she does not have adequate alternative remedies against the Individual Defendants, however, the unavailability of alternative remedies alone does not provide a basis for recognizing new *Bivens* claims. See *Hernandez v.*

18

*Mesa*, 140 S.Ct. 735, 750 (2020). In *Hernandez*, the United States Supreme Court considered whether to recognize a *Bivens* claim against a federal agent shot and killed a child standing on the Mexican side of the United States-Mexico border. *Hernandez*, 140 S.Ct. at 740. The Supreme Court declined to extend *Bivens* to this new context, notwithstanding the fact that the plaintiff lacked alternative federal remedies. *Hernandez*, 140 S.Ct. at 748-50. The Supreme Court discounted the significance of alternative remedies, reasoning that "[t]he absence of statutory relief for a constitutional violation ... does not by any means necessarily imply that courts should award money damages against the officers responsible for the violation." *Hernandez*, 140 S.Ct. at 750. See also *Vanderklok v. United States*, 868 F.3d 189, 205 (3rd Cir. 2017) (explaining that "[a]lthough it is possible that no alternative remedy exists for [the plaintiff], that does not conclude our analysis because 'even in the absence of an alternative, a *Bivens* remedy is a subject of judgment.'") (quoting *Wilkie v. Robbins,* 551 U.S. 537, 550 (2007)).

As *Hernandez* instructs, even assuming that Clements does not have any adequate alternative remedies, the Court must consider whether there are any other "special factors that counsel hesitation in the absence of affirmative action by Congress" before extending a *Bivens* remedy to a new context. *Abbasi*, 137 S.Ct. at 1857.

2.    Special Factors

The Supreme Court has not defined "special factors counseling hesitation," but has clarified that separation-of-powers principles are central to the analysis. *Abbasi*, 137 S.Ct. at 1857-58. "[T]he inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Abbasi*, 137 S.Ct. at 1857-58.

"A special factor is a sound reason to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong." *Canada v. United* States, 950 F.3d 299, 309 (5th Cir. 2020) (citing *Abbasi*, 137 S.Ct. at 1858). The threshold for finding a factor that counsels hesitation "is remarkably low." *Hernandez*, 140 S.Ct. at 822. If any special factors exist, "then 'courts must refrain from creating' an implied cause of action in that case." *Canada*, 950 F.3d at 309 (quoting *Abbasi*, 137 S. Ct. at 1858).

The Individual Defendants argue their status as private individuals, rather than employees of the federal government, is a special factor counseling against finding liability under *Bivens*. For support, they rely on *Rabieh v. Paragon Systems Inc.*, 316 F.Supp.3d 1103, 1105-06 (N.D. Cal. 2018), in which a visitor to a federal building brought *Bivens* claims against individual employees of a private

corporation that contracted with the federal government to provide security services for the building. The plaintiff alleged that the security officer employees violated his constitutional rights by detaining him after he accidentally left the building through an emergency exit. *Rabieh*, 316 F.Supp.3d at 1106-07. After finding that the plaintiff's *Bivens* claims arose in a new context, the court proceeded to the special factor analysis. *Rabieh*, 316 F.Supp.3d at 1108-09. The court found that special factors counseled against extending *Bivens,* including both that the plaintiff had alternative state tort remedies and that the employee defendants were private individuals. *Rabieh*, 316 F.Supp.3d at 1109. The court recognized that "[i]n both the § 1983 and the *Bivens* context, courts have been hesitant to permit private individuals to sue each other for constitutional violations." *Rabieh*, 316 F.Supp.3d at 1109 (citing *Holly v. Scott*, 434 F.3d 287, 291 (4th Cir. 2006)). Here, as in *Rabieh*, the fact that the Individual Defendants are private individuals is one factor counseling against extending a *Bivens* remedy for the constitutional violations alleged by Clements.

As the *Rabieh* court also recognized, however, under Ninth Circuit caselaw it could not summarily dismiss the plaintiff's *Bivens* claims solely because they were "directed to private individuals." *Rabieh*, 316 F.Supp.3d at 1107. The Ninth Circuit has repeatedly made clear that "the private status of the defendant will not

serve to defeat a *Bivens* claim, provided that the defendant engaged in federal action." *Schowengerdt v. General Dynamics Corp.*, 823 F.2d 1328, 1337-38 (9th Cir. 1987). See also *Vega*, 881 F.3d at 1146 (citing *Minneci*, 565 U.S. at 120). "In other words, *Bivens* liability may be applicable to constitutional violations committed by private individuals, but only if they act "under color of federal law" or are "federal actors'." *Boney v. Valline*, 597 F.Supp.2d 1167, 1172 (D. Nev. 2009). Because the plaintiff in *Rabieh* had not adequately alleged that the actions of the employee defendants constituted anything more than private conduct, the court found it would be inappropriate to infer a *Bivens* remedy. *Rabieh*, 316 F.Supp.3d at 1109.

A private individual can be said to have acted under color of federal law if his conduct was "fairly attributable" to the government.[3] *Lugar v. Edmundson Oil Co., Inc.*, 457 U.S. 922, 937 (1982). The Ninth Circuit has identified four tests for determining whether a private individual is acting under color of federal law: "(1) public function; (2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus." *Rooks v. Fritz*, 2019 WL 7584246, at *3 n. 6 (C.D. Cal.

---

[3] "In determining whether a party acts under color of federal law, courts should look to the more established body of law that defines the analogous term – under color of state law – with regard to actions under 42 U.S.C. § 1983." *Bromfield v. McBurney*, 2008 WL 2746289, at *7 (W.D. Wash. July 8, 2008) (internal quotations removed).

Nov. 26, 2019). Under any of these tests, "the central question remains whether the alleged infringement of federal rights is fairly attributable to the government." *Morelli v. Hyman*, 2020 WL 252986, at *5 (D. Haw. Jan. 16, 2020).

The Individual Defendants argue that Clements has not alleged facts giving rise to a reasonable inference that their conduct as employees of a private entity was fairly attributable to the federal government, thus counseling against recognizing a *Bivens* remedy. The Individual Defendants rely on *Holly v. Scott*, 434 F.3d 287 (4th Cir. 2006), in which a prisoner brought a *Bivens* suit against individual employees of a private entity operating a federal prison pursuant to a contract with the federal government. *Holly*, 434 F.3d at 288. Both individual defendants were employed directly by the private company, and thus the only link between their employment and the federal government was the company's contract with the federal Bureau of Prisons. *Holly*, 434 F.3d at 288. Because the individual defendants were employees of "a wholly private corporation in which the federal government has no stake other than a contractual relationship," the Court concluded that defendants' actions were not "fairly attributable" to the federal government. *Holly*, 434 F.3d at 291. The Court identified this as a special factor counseling hesitation, and declined to extend *Bivens*. *Holly*, 434 F.3d at 291.

Here, as in *Holly*, Clements alleges only that the Individual Defendants are employees of FirstLine, a wholly private corporation in which the federal government has no stake other than a contractual relationship. The Amended Complaint does not allege any facts from which it could reasonably be inferred under any of the four legal tests that these individuals were acting under color federal law when Clements' employment was terminated. Because Clements has not adequately alleged that the actions of the Individual Defendants were fairly attributable to the federal government, this counsels against recognizing a *Bivens* cause of action.

Even if Clements could allege facts suggesting that the Individual Defendants' conduct was fairly attributable to the federal government, such that they were acting under color of federal law, the United States Supreme Court has cautioned against creating an implied cause of action where national security interests are implicated. *Abbasi*, 137 S.Ct. at 1861 (recognizing that [n]ational-security policy is the prerogative of Congress and President," and "[j]udical inquiry into the national-security realm raises concerns for the separation of powers…"). In *Vanderklok v. United States*, 868 F.3d 189, 207 (3d. Cir. 2017), the Third Circuit Court of Appeals found that national security implications counseled against implying a *Bivens* claim for damages against a TSA screener, even if the

plaintiff did not have any meaningful alternative remedies. In considering whether special factors counseled hesitation, the Third Circuit recognized that "[t]he TSA' was created in response to the terrorist attacks of September 11, 2001, specifically for the purpose of securing our nation's airports and air traffic." *Vandkerlok,* 868 F.3d at 206. Because the plaintiff's the claims could "be seen as implicating the Government's whole response to the September 11 attacks, thus of necessity requiring an inquiry into sensitive issues of national security," Third Circuit found this was "[a] special factor counseling hesitation in implying a *Bivens* action." *Vanderklok*, 868 F.3d at 206. Assuming the Individual Defendants' conduct was fairly attributable to the TSA, the same could be said here.

In addition, the fact that Congress has provided TSA with broad authority over security screening personnel employment matters also counsels extending *Bivens* under the circumstances. For the Court to recognize a *Bivens* claim alleging constitutional violations arising out of an alleged wrongful discharge would be to do what Congress effectively prohibited by way of the ATSA's preemption provision, and allow security screeners to challenge employment decisions by the TSA and private security companies with whom the TSA contracts.

For these reasons, the Court finds that special factors counsel hesitation in recognizing an implied *Bivens* cause of action for the First and Fifth Amendment violations alleged in Counts I through III of the Amended Complaint.

### C.   Blacklisting Claim (Count IV)

The Individual Defendants move to dismiss Count IV of the Amended Complaint under Rule 12(b)(6) for failure to state a claim for relief and, alternatively, for lack of subject matter jurisdiction under Rule 12(b)(1).

### 1.   Rule 12(b)(6)

The Individual Defendants argue that Count IV fails to state a claim for relief because it contains nothing more than threadbare recitals of the elements of a blacklisting claim under Montana law, and therefore fail to satisfy the notice pleading requirements of Rule 8(a).

To satisfy Rule 8(a), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 677-79.

Montana's blacklisting statute provides:

> If a company or corporation in this state authorizes or allows any of its agents to blacklist or if a person does blacklist any discharged employee or

26

attempts by word or writing or any other means to prevent any discharged employee or any employee who may have voluntarily left the company's service from obtaining employment with another person, except as provided for in 39-2-802, the company, corporation, or person is liable in punitive damages to the employee prevented from obtaining employment, to be recovered in a civil action, and is also punishable as provided in 39-2-804.

Mont. Code Ann. § 39-2-803.

In Count IV of the Amended Complaint, Clements alleges that "she performed her duties above average to excellent as noted in her personnel records" (Doc. 19, ¶ 4); she "had no record of adverse employment actions until her employment was terminated by CSSI/Firstline" (Doc. 19, ¶ 5); she was given two "written 'Corrective Action Notice[s]' for allegedly violating company policy" (Doc. 19, ¶¶ 7, 18); she unsuccessfully appealed the decision to terminate her employment (Doc. 19, ¶¶ 23-24; the Individual Defendants were retained by Trinity when it was awarded the contract with the TSA as required by the terms of TSA's contract with Trinity (Doc. 19, ¶ 73); Clements applied for two employment positions with Trinity for which she was highly qualified but was not offered either position (Doc. 19, ¶ 75-76); and the Individual Defendants attempted and did prevent her from being employed by Trinity. (Doc. 19, ¶ 77).

Construing these allegations in the light most favorable to Clements, they allow the Court to draw the reasonable inference that the Individual Defendants may have blacklisted Clements by their actions or written statements in her

personnel file. At this stage, the Court cannot say that Clements fails to state a claim that would entitle her to relief under Montana law. Accordingly, the Individual Defendants motion to dismiss Count IV for failure to state a claim should be denied.

2.     Rule 12(b)(1)

Alternatively, the Individual Defendants move to dismiss Clements' blacklisting claim for lack of subject matter jurisdiction under Rule 12(b)(1). They argue that if, as recommended above, the Court dismisses Clements' federal constitutional claims, it should decline to exercise supplemental jurisdiction over her state law blacklisting claim.

"A court may decline to exercise supplemental jurisdiction over related state-law claims once it has dismissed all claims over which it has original jurisdiction." *Orr v. Gwinn*, 264 F.3d 817, 826 (9th Cir. 2001). "The decision whether to continue to exercise supplemental jurisdiction over state law claims after all federal claims have been dismissed lies within the district court's discretion." *Satey v. JPMorgan Chase & Co.*, 521 F.3d 1087, 1091 (9th Cir. 2008). See also *San Pedro Hotel Co., Inc. v. City of L.A.*, 159 F.3d 470, 478 & n.12 (9th Cir. 1998) (holding the district court did not abuse its discretion by declining to exercise supplemental jurisdiction and requiring no further explanation).

When FirstLine removed this matter to federal court, it did so based on diversity jurisdiction under 28 U.S.C. § 1332. (Doc. 1). At that time, FirstLine and CSSI were the only two defendants, and were of diverse citizenship from Clements. (Doc. 5). Not long after removal, however, Clements filed her Amended Complaint adding federal constitutional claims and naming the Individual Defendants. (Doc. 19). As alleged in the Amended Complaint, Clements and each of the Individual Defendants are citizens of Montana, thereby defeating diversity jurisdiction. (Doc. 19 at 3-4). See *Demarest v. HSBC Bank USA, N.A.*, 920 F.3d 1223, 1226 (9th Cir. 2019) (§ 1332 requires "complete diversity of citizenship, meaning that the citizenship of each plaintiff is different from the citizenship of each defendant"). Based on the newly alleged federal constitutional claims, however, the Court has original federal question jurisdiction pursuant to 28 U.S.C. § 1331. And pursuant to 28 U.S.C. § 1367, the Court also has supplemental jurisdiction over Clements' state law blacklisting claim because it is related to her federal constitutional claims. See 28 U.S.C. § 1367(a) (permitting a federal court to exercise supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy").

Assuming the Court grants their motion to dismiss Clements' federal constitutional claims, the Individual Defendants ask the Court to decline to exercise supplemental jurisdiction over her sole remaining state law claim. In response, Clements argues this request is premature because her federal claims have not yet been dismissed. In addition, she maintains that if the Court were to dismiss her blacklisting claim she would be barred by the statute of limitations from bringing it again in state court. Thus, Clements requests that if her *Bivens* claims are dismissed and the Court declines to exercise supplemental jurisdiction, the Court either remand the case to the original state court or give her time to file a motion for remand and seek attorney fees under 28 U.S.C. § 1447(c).

The Court agrees with the Individual Defendants that if, as recommended above, Counts I-III are ultimately dismissed as to both FirstLine and Individual Defendants, the Court should decline to exercise supplemental jurisdiction over Count IV. Because Clements would be barred by the statute of limitations from bringing her blacklisting claim again in state court, however, the Court should remand this matter to state court rather than ordering it dismissed.

## VI.   <u>Conclusion</u>

For the reasons discussed above,

IT IS RECOMMENED that Clements' oral motion to dismiss TSA and the Department of Homeland Security be GRANTED.

IT IS FURTHER RECOMMENDED that FirstLine's Motion for Judgment on the Pleadings as to Counts I-III of the Amended Complaint (Doc. 29) be GRANTED.

IT IS FURTHER RECOMMENDED that the Individual Defendants' Motion to Dismiss Clements' blacklisting claim under Fed. R. Civ. P 12(b)(6) be DENIED but their alternative Motion to Dismiss Clements' blacklisting claim for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1) (Doc. 60) be GRANTED, and this matter be remanded to state court.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after entry hereof, or objection is waived.

DATED this 5th day of November, 2020

Kathleen L. DeSoto
United States Magistrate Judge

31